**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

Civil Action No.:

**TERUMO BCT, INC.**, a Colorado Corporation,

        Plaintiff,

v.

**KALYPSO L.P.**, an Ohio Limited Partnership,

        Defendant.

---

## COMPLAINT AND JURY DEMAND

---

COMES NOW, Plaintiff, Terumo BCT, Inc. ("Terumo"), by and through undersigned counsel, and, for its Complaint and Jury Demand against Kalypso L.P. ("Kalypso") states and alleges as follows:

### PARTIES, JURISDICTION AND VENUE

1. Plaintiff, Terumo BCT, Inc. is a Colorado corporation with its principal place of business located at 10811 West Collins Avenue, Lakewood, CO 80215.

2. Defendant, Kalypso L.P. is an Ohio limited partnership with its principal place of business located at 23230 Chagrin Boulevard, Suite 950, Beachwood, Ohio 44122. Kalypso L.P.'s general partner, Kalypso Management, Inc. is an Ohio corporation with its principal place of business also located at 23230 Chagrin Boulevard, Suite 950, Beachwood, Ohio 44122. On information and belief, none of Kalypso L.P.'s limited partners are Colorado entities or Colorado residents.

3. This Court has jurisdiction of this matter pursuant to 28 U.S.C. § 1332(a)(1) because the parties to this action are citizens of different states and the amount in controversy exceeds $75,000, not including attorney fees and costs.

4. This Court has personal jurisdiction over the out-of-state Defendant because, as set forth herein, Defendant has conducted business in this District, Defendant has entered into certain relevant contracts in the State of Colorado, and a substantial portion of the conduct complained of herein occurred in this District.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred in the State of Colorado.

## GENERAL ALLEGATIONS

6. Terumo operates in the highly-regulated medical device industry. It is a global leader in blood component, therapeutic apheresis and cellular technologies serving customers in more than 130 countries.

7. In 2017, Terumo was looking for an eQMS (electronic quality management system) and an eDMS (electronic document management system) solution for the global integration and regulation of its product development and manufacturing. Specifically, Terumo was interested in the 'Windchill PLM' software platform, which was developed by a third party software company, PTC, Inc. ("PTC").

8. Kalypso is consulting firm. It claims to have extensive knowledge of and implementation experience with leading software providers, including PTC.

9. On July 12, 2017, Terumo and Kalypso entered into a Professional Services Agreement (the "PSA") and a Statement of Work ("SOW") whereby Terumo engaged Kalypso to provide professional consulting services related to the design, development and implementation of the integrated electronic document and quality management solutions within PTC's Windchill software platform.

10. During the pre-contract sales cycle and negotiations of the PSA and SOW, and prior to the execution of the PSA and SOW, representatives from Kalypso gave a presentation to Terumo on February 15, 2017 regarding Kalypso's qualifications. During this presentation, Kalypso represented itself as "a market leader . . . in Quality and Compliance system implementations in the Medical Device industry," and asserted that it had "a strong track record of delivering enterprise solutions to companies with global operations" and "100s of years of document and quality system implementation experience".

11. Kalypso further claimed during the February 15, 2017 presentation that it had specific and extensive experience implementing "PTC's Medical Device Solutions for highly regulated industries," that Kalypso's approach leverages "out-of-the-box functionality on the latest PTC product technologies," that Kalypso was a "dedicated PTC Service Advantage Partner with proven medical device industry success," that Kalypso had "90+ PTC implementation practitioners on three continents," and that Kalypso had a "unique depth of Medical Device implementation experience."

12. In the PSA, the Parties acknowledged these Kalypso representations and the PSA specifically and expressly provides that Terumo relied on Kalypso's purported expertise in deciding to engage Kalypso as an independent contractor.

13. The PSA obligates Kalypso to "perform consulting or other professional services for [Terumo] on an as-needed basis . . . to the extent agreed by the Parties in a statement of work" incorporated into the PSA.

14. The SOW, which is subject to the terms of the PSA, describes in further detail the consulting services to be provided by Kalypso related to the design, development and implementation of Terumo's eQMS and eDMS solutions.

15. The SOW provides a list of required activities and deliverables. Additionally, the SOW contained a list of assumptions and critical success factors. And, while the SOW contemplated a joint Terumo / Kalypso work group, Terumo's role was to provide logistics, communication, scheduling, facilities, data access, guidance and support.

16. Terumo and Kalypso agreed upon the work to be performed under the SOW, and Terumo complied with all provisions of the SOW and the PSA.

17. Kalypso was paid on a time and materials basis. The estimated fees and expenses for the design, development and implementation of the eQMS and eDMS solutions was nearly $3.5 million. Kalypso has been paid over $2.3 million in professional fees.

18. Kalypso's purported performance under the PSA began in August, 2017.

19. Kalypso's performance under the PSA and SOW was untimely, did not meet reasonable professional standards, was negligent, and failed entirely to meet the material requirements of the PSA and the SOW.

20. Kalypso did not provide all necessary qualified personnel to perform the required services, tasks and promises under the PSA and the SOW.

21.     The only deliverable fully completed, reviewed and accepted was program deliverable identified as DMS_QMS-005. Kalypso failed to complete any other deliverable from the list of 43 deliverables (some of which contained sub-deliverables) in the SOW, and no other deliverables were ever formally presented to Terumo for review or acceptance, or, in fact, reviewed or accepted by Terumo. No deliverables were ever completed and/or presented to Terumo for final review and approval pursuant to the agreed-upon process.

22.     In February, 2018, Kalypso was to have sufficiently completed the project to present a dry run demonstration event for Terumo's March testing event. However, even by March 2018, Kalypso had made little progress on the project despite having invoiced Terumo for millions of dollars in professional fees.

23.     Terumo expended substantial money to organize the testing, including flying in its business partners from all over the world for the presentation. The dry run test was an absolute failure. The testing event established that despite having been paid millions of dollars in professional consultant fees, Kalypso was far from completing a properly and professionally designed, developed and implemented eQMS / eDMS solutions, as the PSA and SOW required.

24.     Terumo, therefore, asked Kalypso to stop all work on the project while Terumo completed an assessment on Kalypso's work completed to date and the status of the project. In March/April, 2018, Terumo paid a third party, PTC, approximately $200,000 to complete an assessment.

25.     PTC's assessment was that the design, development and implementation work performed by Kalypso was so poor that the entire project would have to be restarted.

26. PTC's assessment was that PTC, at substantial expense for Terumo, would have to start over from scratch to deliver the completed project that Kalypso had promised and which was the subject of the PSA and SOW.

27. Kalypso did not, despite its representations and promises, have the personnel, skills, experience or capability to perform the consulting services, including the design, development and implementation of PTC's Windchill eQMS / eDMS solutions, required under the SOW and the PSA.

28. Terumo has engaged PTC, at substantial expense, to provide the professional services and software product that Kalypso was paid for, but never delivered.

29. Terumo has learned during its engagement with PTC that Kalypso engaged in dishonesty and self-dealing, misrepresented the scope of work required to perform the contract, and has misrepresented the capabilities a PTC's Windchill platform for their own financial gain.

30. Kalypso charged Terumo for weeks of unnecessary work. One of the Terumo-required functionalities for the design, development and implementation of PTC's Windchill eDMS software is a task plan for impact assessment related to changes in Terumo's manufacturing process. On or about November 14, 2017, Kalypso's Nate Reisch informed Terumo that the development of this functionality would require 14-20 weeks of work. Kalypso has charged Terumo for some of this work, and has been paid for some of this work. However, PTC recently informed Terumo that, in fact, the development of this functionality requires only 1 to 2 weeks of work.

31. Additionally, Terumo also required that its Windchill eQMS / eDMS solution allow for the attachment of documents at a granular level to support various work streams. On or

about November 14, 2017, Kalypso's Nate Reisch informed Terumo that this functionality would require 2-4 weeks of work. Terumo has paid Kalypso for this work. However, PTC recently has informed Terumo that in order to obtain the functionality Terumo requested, all Kalypso had to do was activate already existing settings in the Windchill platform.

32. Terumo also required that, as part of its essential quality control process and procedures, the Windchill eDMS software solution must allow for certain records and documents to be stored in the eDMS system. On or about June 27, 2017, Kalypso's Van Gresham informed Terumo that the Windchill eDMS solution could not perform the required functionality without the use of Kalypso's own software program which would require annual licensing fees to Kalypso. PTC has informed Terumo that Kalypso's representation is not correct; the Windchill eDMS software solution is capable of this functionality without Kalypso's additional software product.

33. After paying Kalypso over $2.3 million in professional fees, Terumo has no workable eQMS or eDMS solution, or even a solid foundation from which to develop a workable eQMS or eDMS solution.

34. Not only does Terumo not have the finished project promised by Kalypso, it has not received completed deliverables, and has not received any measurable benefit for the $2.3 million in professional fees and the nearly $260,000 in expenses already paid to Kalypso.

35. Additionally, Terumo incurred approximately $800,000 in subscriptions and cloud service fees during Kalypso's failed implementation efforts, for which Terumo has received no benefit.

## FIRST CLAIM FOR RELIEF
(**Fraudulent Inducement**)

36. Terumo incorporates the allegations of paragraphs 1 through 35 above as if fully set forth herein.

37. Prior to the execution of the PSA and the SOW in July 2017, Kalypso represented to Terumo that it had substantial experience and expertise in the field of eDMS/eQMS for highly regulated global enterprises. Further, Kalypso expressly represented that it had specific substantive experience with the design, development and implementation of PTC's Windchill eQMS / eDMS solution, and that it had qualified and experienced personnel that it would staff on the Terumo project.

38. Given the complex nature of the eDMS/eQMS solutions to be developed for Terumo's highly-regulated global medical device enterprise, Terumo desired to engage consultants with substantial experience with industry participants with a global business, and with specific substantive experience designing, developing and implementing PTC's Windchill platform. Therefore, Kalypso's representations were material.

39. Terumo relied on the representations made by Kalypso, including, without limitation, the representations Kalypso made during the February 15, 2017 presentation, in engaging Kalypso to complete its critical eDMS/eQMS solutions, and in entering into the PSA and the SOW.

40. Kalypso's representations were false.

41. Terumo's reliance on Kalypo's misrepresentations was justified.

42. Terumo's justified reliance on Kalypo's misrepresentations caused Terumo to enter into the SOW and PAS, and has resulted in damage to Terumo in an amount to be established at trial.

## SECOND CLAIM FOR RELIEF
(**Breach of Warranty**)

43. Terumo incorporates the allegations of paragraphs 1 through 42 above as if fully set forth herein.

44. The PSA executed by Terumo and Kalypso contained express warranties.

45. Kalypso warranted to Terumo that (i) its services would be of a professional quality conforming to the specifications in the applicable statement of work, (ii) it would provide all necessary personnel to perform the services, and (iii) the personnel would be reasonably qualified to perform the tasks they were required to undertake.

46. Kalypso breached the express warranty, by, including but not limited to, failing to perform its services in a professional manner and failing to provide all necessary and properly qualified personnel reasonable capable of performing the promised services in a professional manner.

47. Kalypso's breach proximately caused Terumo losses and damages in an amount to be established at trial.

48. Terumo timely provided Kalypso with notice of Kalypso's breaches of the express warranties and Kalypso did not cure the breaches.

## THIRD CLAIM FOR RELIEF
(**Breach of Contract**)

49. Terumo incorporates the allegations of paragraphs 1 through 48 above as if fully set forth herein.

50. Terumo and Kalypso entered into the PSA and the SOW in or about July 2017.

51. Terumo performed all of its duties under the PSA and the SOW that were not waived by Kalypso.

52. Kalypso failed to perform the contract by, including, but not limited to, failing to provide qualified personnel to perform the services promised in the PSA and the SOW, failing to meet the project schedule, failing to perform activities and provide the deliverables that were promised under the PSA and the SOW, and failing to design, develop and/or implement PTC's Windchill eQMS / eDMS solution for Terumo's eQMS / eDMS programs.

53. Kalypo's breach of the SOW and the PSA has proximately caused Terumo losses and damages in an amount to be established at trial.

## FOURTH CLAIM FOR RELIEF
(**Breach of the Implied Covenant of Good Faith and Fair Dealing**)

54. Terumo incorporates the allegations of paragraphs 1 through 53 above as if fully set forth herein.

55. The PSA and the SOW contain an implied covenant of good faith and fair dealing.

56. The implied covenant of good faith and fair dealing required Kalypso to act in good faith to effectuate intentions of the parties and to honor their reasonable expectations.

57. Kalypso's performance under the PSA and the SOW included its discretionary authority to determine the personnel to assign to the project, the best and most efficient methods and processes for the design, development and implementation of PTC's Windchill eQMS / eDMS solution to meet Terumo's functionality requirements, the number of hours to bill to Terumo for Kalypso's performance under the contract, etc.

58. Kalypso breached the implied covenant of good faith and fair dealing by, including but not limited to, billing excessive time for the work to be performed, misrepresenting the functionality of PTC's Windchill eQMS / eDMS solution, misrepresenting that their own software program, which required a paid subscription, was necessary to obtain certain task functionality that Terumo required.

59. Kalypso used the discretion conferred by the PSA and the SOW to act dishonestly and to act outside the scope of accepted professional and commercial practices to deprive Terumo of the benefit of the contract.

60. Kalypo's breach of the implied covenant of good faith and fair dealing contained in the SOW and the PSA has proximately caused Terumo losses and damages in an amount to be established at trial.

WHEREFORE, Plaintiff respectfully requests that this Court:

1. Rescind the Professional Services Agreement and the Statement of Work, and award damages according to proof;

2. Alternatively, award general damages according to proof for Plaintiff's breach of contract and breach of warranty;

2. Costs of suit; and

3.  Any other relief the Court deems proper.

## JURY DEMAND

Terumo BCT, Inc. demands a trial by jury on all triable issues.

Respectfully submitted this 31st day of October, 2018.

*s/ Janette L. Ferguson*
Janette L. Ferguson (CO SBN 20164)
Devin C. Daines (CO SBN 47092)
LEWIS, BESS, WILLIAMS & WEESE P.C.
1801 California St., Suite 3400
Denver, Colorado 80202
(303) 861-2828
jferguson@lewisbess.com
ddaines@lewisbess.com

Plaintiff's Address:
10811 West Collins Avenue
Lakewood, CO 80215